UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

NSM Resources Corporation,            Civil No. 07-2501 (DWF/SRN)

         Plaintiff,

v.            **MEMORANDUM OPINION AND ORDER**

Target Corporation,

         Defendant.

---

Jerome S. Rice, Esq. Jerome S. Rice & Associates, counsel for Plaintiff.

James R. Steffen, Esq., and Timothy J. Cruz, Esq., Faegre & Benson LLP, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court upon Defendant Target Corporation's ("Target") motion to dismiss and motion for summary judgment. Plaintiff NSM Resources Corporation ("NSM") opposes the motions. For the reasons set forth below, the Court denies Target's motion to dismiss and grants Target's motion for summary judgment.

## BACKGROUND

NSM markets and sells toys, shoes and clothing under the trademarks HUCK and HUCKDOLL in the United States. NSM's products are associated with an "action sports" context. (Doc. No. 31 ¶ 13, Ex. M at 19.) One of NSM's owners, Zane Murdock ("Murdock"), indicated that he considers action sports to include skateboarding, biking,

wake boarding, surfing, kayaking, base jumping, sky diving, and rock climbing. In this context, the word "huck" is a verb meaning "to catch air" and it has been described by NSM as follows:

> Used in the action sports arena when explaining athletes becoming airborne. This occurs after going off of jumps, ramps, cliffs or specific elements of respective sports: skiers huck cliffs, base jumpers huck free standing objects, wakeboarders huck the wake created by a boat, surfers huck waves, snowboarders huck in halfpipes, skateboarders huck ramps and onto and off of rails.

(*Id.* ¶ 1, Ex. A.) According to NSM, the word huck was invented in the late 1990s by a group of professional skiers in the Lake Tahoe area who own NSM along with Murdock and who used this term to describe their "aerial maneuvers." (*Id.*)

NSM alleges that Target infringed on its HUCK trademark by selling men's athletic shoes with the model name Huck under its house brand, PROSPIRIT, in 2006. NSM contacted Target, informing Target that NSM believed that it was infringing on NSM's mark. Target indicated that it did not believe it was infringing, and denied that any likelihood of customer confusion existed. Nonetheless, Target changed the model name for the PROSPIRIT shoe in question to "Samuel." (*Id.* ¶ 6, Ex. F.)

NSM subsequently filed this suit alleging Target violated section 43(a) of the Lanham Act, 15 U.S.C. 1125(a), and common law infringement. Target moves for summary judgment with respect to these claims. In addition, Target moves for dismissal of this action under the doctrine of *res judicata*, which Target contends applies due to a stipulation into which NSM and Target entered in connection with a separate action in Nevada.

**DISCUSSION**

**I.     Motion to Dismiss**

    **A.     Standard of Review**

Target has moved for dismissal arguing that NSM fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens,* 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 1964-65. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 1965.

### B. Failure to State a Claim

In June 2008, NSM filed a suit against Target and its law firm, Faegre & Benson, LLP, in the United States District Court for the District of Nevada styled as *NSM Resources Corporation v. Target Corporation*, Case No. 3:08-CV-00357 (D. Nev. 2008) (the "Nevada Action"). NSM asserted trademark infringement claims, among others, in that suit. In September 2008, the parties entered into a stipulation for dismissal with prejudice (the "Stipulation") of the Nevada Action. On September 17, 2008, a judgment was entered dismissing the Nevada Action with prejudice. (Doc. No. 53 ¶ 11, Ex. K.)

Target asserts that the judgment issued in the Nevada Action bars NSM's claims in this action. Target contends that the first judgment entered, regardless of whether it occurs in the first-filed or a later filed suit, is to be given preclusive effect when the same claims are asserted in both cases.

"The doctrine of *res judicata* applies to repetitive suits involving the same cause of action." *Lundquist v. Rice Mem'l Hosp.,* 238 F.3d 975, 977 (8th Cir. 2001). *Res judicata* precludes the relitigation of claims rather than the relitigation of specific issues, which is barred by the doctrine of collateral estoppel. *Canady v. Allstate Ins. Co.,* 282 F.3d 1005, 1014 (8th Cir. 2002). *Res judicata*, therefore, bars litigants from bringing claims on grounds that were raised or could have been raised when: (1) a court of competent jurisdiction rendered the prior judgment; (2) the prior judgment was a final judgment on the merits; and (3) both cases involved the same cause of action and the same parties or their privies. *Banks v. Int'l Union Elec., Elec., Tech., Salaried and Machine Workers,* 390 F.3d 1049, 1052 (8th Cir. 2004); *Canady,* 282 F.3d at 1014. A

claim is barred by *res judicata* if it arises out of the same nucleus of operative facts as the prior claim. *Banks,* 390 F.3d at 1052.

As a general principle, Target's arguments are correct. When parties to a suit agree to dismiss a claim with prejudice, the dismissal acts as a "final adjudication on the merits" for *res judicata* purposes. *Larken, Inc. v. Wray*, 189 F.3d 729, 732 (8th Cir. 1999). This is true even when a party is mistaken as to the preclusive effect of such a stipulation. For instance, in *Nemaizer v. Baker*, the Second Circuit considered whether a stipulation for dismissal with prejudice operated as *res judicata* on a subsequent suit where the plantiff asserted the stipulation was not intended to have such an effect.[1] 793 F.2d 58 (2d Cir. 1986). The court declared that while the consequences of entering into the agreement were not fully weighed and the choice to enter the agreement was a poor one, the court could not set aside the settlement. *Id*. at 62. The court held that the stipulation and resulting order barred future actions. *Id*. It is clear, then, that NSM would be barred from bringing a future suit based on the claims asserted in the Nevada Action.

It is not equally clear, however, that the dismissal in the Nevada Action bars NSM from continuing with its claims before this Court. Where a dismissal with prejudice is based on a stipulation between the parties, principles of *res judicata* apply in a modified form to the matters specified in the settlement agreement rather than the claims in the original complaint. *Norfolk S. Corp. v. Chevron, USA, Inc.*, 371 F.3d 1285, 1288 (11th

---

[1] *Nemaizer* has been cited favorably by the Eighth Circuit. *See TCBY Sys., Inc. v. EGB Assocs., Inc.*, 2 F.3d 288 (8th Cir. 1993) (discussing *Nemaizer* and holding that a stipulation for dismissal with prejudice barred consideration of claims and that mistake as to legal effect of a dismissal was not grounds to void the settlement agreement).

Cir. 2004) ("A judgment dismissing an action with prejudice based upon the parties' stipulation, unlike a judgment imposed at the end of an adversarial proceeding, receives its legitimating force from the fact that the parties consented to it.").

In this case, the Stipulation is two sentences long. In its entirety it states: "The parties in the above-entitled case hereby stipulate to dismiss this case with prejudice. Each party [is] to pay its own costs and attorney fees." (Doc. No. 53 ¶ 9, Ex. I.) There is no indication in this document that the parties intended to settle the claims asserted in the matter pending before this Court. Thus, this settlement is different from that in *TCBY* in which the parties submitted a much broader proposed order providing for the dismissal of "all claims pending before the Court, and all claims arising out of the transaction or occurrence that is the subject matter of this lawsuit with prejudice." 2 F.3d at 290. Therefore, the Court declines to dismiss the Complaint pursuant to the doctrine of *res judicata*.

## II.  Motion for Summary Judgment

### A.  Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which

are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank,* 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).

### B. Trademark Infringement

NSM has alleged trademark infringement under the Lanham Act of its federally registered mark and common law trademark infringement.[2] To prevail, NSM must prove (1) ownership of a valid trademark; and (2) likelihood of confusion between NSM's HUCK mark and Target's use of the Huck model name. *First Bank v. First Bank Sys., Inc.,* 84 F.3d 1040, 1044 (8th Cir. 1996). NSM's mark is federally registered and Target does not challenge NSM's ownership of the mark. Therefore, this case turns on whether there is a likelihood of confusion between the two marks.

---

[2] Registration is *prima facie* evidence of the validity of a trademark. 15 U.S.C. § 1115(a). Even without registration, however, a common law trademark may arise from the adoption and actual use of a word, phrase, logo, or other device to identify goods or services with a particular party. *First Bank*, 84 F.3d at 1044. Courts apply the same analysis to determine trademark infringement whether the mark is registered or is a common law mark. *See, e.g., Minn. Specialty Crops, Inc. v. Minn. Wild Hockey Club, LP*, No. 00-cv-2317 (JTF/FLN), 2002 WL 1763999 (D. Minn. July 26, 2002).

Trademark law protects an owner against use of its mark on any product or service that would reasonably be thought by the buying public to come from the same source. 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 24.6 (4th ed. 1998). Thus, the test of likelihood of confusion encompasses any type of confusion, including confusion as to origin, source, sponsorship, affiliation, or connection. *Id.*

When evaluating likelihood of confusion, a court must consider: (1) the strength of the infringed trademark; (2) the similarity between the plaintiff's and defendant's marks; (3) the competitive proximities of the parties' products; (4) the alleged infringer's intent to confuse the public; (5) the evidence of actual confusion; and (6) the degree of care reasonably expected of potential customers. *SquirtCo. v. Seven-Up Co.,* 628 F.2d 1086, 1091 (8th Cir. 1980). While none of these factors is dispositive, a court must use the factors at the summary judgment stage "as a guide to determine whether a reasonable jury could find a likelihood of confusion." *Duluth News-Tribune v. Mesabi Publ. Co.,* 84 F.3d 1093, 1096 (8th Cir. 1996).

    1.    Strength of the Trademark

Trademarks are considered to fall into one of four categories: (1) arbitrary or fanciful, (2) suggestive, (3) descriptive, or (4) generic. *Id.* These categories are differentiated in a spectrum from strongest to weakest.

> An arbitrary or fanciful trademark is the strongest type of mark and is afforded the highest level of protection. At the other end of the spectrum, a generic term is one that is used by the general public to identify a category of goods, and as such merits no trademark protection. Suggestive and descriptive marks fall somewhere in between. A suggestive mark is one that requires some measure of imagination to reach a conclusion regarding the nature of the product. A descriptive mark, on the other hand,

> immediately conveys the nature or function of the product and is entitled to protection only if it has become distinctive by acquiring a secondary meaning.

*Id.* (citations omitted).

Target contends that the HUCK mark is descriptive and, therefore, is entitled only to minimal protection. Target bases its argument on NSM's description of the verb "to huck" as an action sports-related activity and the connection between the active sports context and NSM's products. The Court disagrees.

Descriptive terms are used describe all goods of a similar nature. *Schwan's IP, LLC v. Kraft Pizza Co.*, 460 F.3d 971, 974 (8th Cir. 2006). Such a term describes the ingredients, characteristics, qualities, or other features of the product, and must be so associated with the product that it becomes a designation of the source rather than of a characteristic of the product. *Id.*; s*ee also Frosty Treats Inc. v. Sony Computer Entm't Am. Inc.*, 426 F.3d 1001 (8th Cir. 2005) (holding "Frosty Treats" conveyed immediate idea of the qualities and goods sold by company selling frozen desserts from ice cream trucks and no imagination was required to reach a conclusion as to the nature of the goods); *Home Builders Ass'n of Greater St. Louis v. L&L Exhibition Mgmt.*, 226 F.3d 944 (8th Cir. 2000) (stating that trade show names, "The St. Louis Builders Home and Garden Show," and "The St. Louis Builders Home and Remodeling Show," were descriptive because the terms described the characteristics of the shows but also identified the sponsor or source in a way that left competitors free to adopt other equally descriptive but not inherently confusing names). The word huck, however, does not describe the ingredients, characteristics, qualities, or other features of shoes and clothing,

9

the products to which NSM attaches the HUCK mark. Rather, some degree of imagination and thought is required to connect the HUCK mark and the products for which it is used. Therefore, the Court concludes that the HUCK mark is suggestive.

Nonetheless, the word huck is not exclusively used by NSM, nor is it used exclusively within the action sports context NSM seeks to evoke with its products. Target notes that the word huck and variants thereof are used by other parties on shoes and clothing. Further, according to the U.S. Patent and Trademark Office database, there are over sixty references to "live" marks incorporating the word huck. (Doc. No. 31 ¶ 12, Ex. L.) Additionally, the name "Huck" is commonly known in the English language as the nickname of the title character in Mark Twain's popular American novel *Adventures of Huckleberry Finn*. Therefore, Target contends the NSM's mark is in a crowded field and is entitled to lesser protection. The Court agrees that NSM's HUCK mark is entitled to lesser protection due to third party usage of the word huck. *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 626-627 (8th Cir. 1987) (stating that "evidence of third party usage of similar marks on similar goods is admissible and relevant to show that the mark is relatively weak and entitled to a narrower scope of protection").

The Court concludes, viewing the facts in the light most favorable to NSM, that this factor favors NSM because the mark is suggestive. The degree to which it favors NSM, however, is only slight due to third party and popular usage.

    2. Similarity Between the Trademarks

In analyzing the similarity of two marks, a court must look to the overall impression created by the marks rather than merely comparing their individual features.

*Id.* at 627 (upholding trial court's decision comparing color schemes, lettering styles, and box designs for two cereals in determining marks were dissimilar).  The use of identical, even dominant, words in common does not automatically mean that the two marks are similar.  *Id*.  The Court may consider the marks' visual, aural, and definitional attributes and may also compare the trade dress of the products in determining whether the total effect of the two marks is confusingly similar.  *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 830 (8th Cir. 1999).

Viewing the evidence in the light most favorable to NSM, the Court concludes that the marks are not similar.  This dispute is principally about the marks as applied to a children's shoe made by NSM and the adult men's running shoe made by Target.  Though both products use the word huck, the word is displayed differently on the products.  First, the name is displayed in different fonts and different sizes on the children's shoe made by NSM and the adult men's shoe sold by Target.  NSM's HUCK is in stylized, bubble letters with a lightning bolt emanating from it and it appears numerous times on both the shoe box and the shoe.  Conversely, Target's use of the word huck appears in a largely unremarkable, standard typeface, and is displayed in a small font as the model name near the identification of the size of the shoe, on a tag attached to the shoe, and on a placard on the shelf identifying the shelving location of the shoe.  Target's Huck model name also does not appear on the shoe itself.

Further, NSM's HUCK is central to the identity of the product NSM markets, whereas Target's use of the word huck is secondary to its house mark.  Target used Huck as a model name for a shoe within its line of house brand PROSPIRIT shoes.  The

11

dominant feature of both the presentation of the Target shoe and its marketing is the PROSPIRIT mark, not the model name of the shoe. *Id*. at 831 (holding that the prominent display of house marks conveys perceptible distinctions between two products and citing similar cases).

The Court concludes that there is little, if any, similarity between the marks, notwithstanding that both use the same word. This factor favors Target.

          3.      Competitive Proximities of the Products

A showing of direct competition is not required for the analysis under this factor. *Kemp v. Bumble Bee Seafoods, Inc.,* 398 F.3d 1049, 1056 (8th Cir. 2005); *see also Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 399 (8th Cir. 1987) (holding no direct competition required because "confusion, not competition, is the touchstone of trademark infringement"). Rather, this factor requires a broader examination of the products' relationship in the market. *Kemp,* 398 F.3d at 1056. Where products are related, it is reasonable for consumers to think that the products come from the same source and confusion is more likely. *Id.* Where products are wholly unrelated, however, this factor weighs against a finding that confusion is likely. *Id*.

Here, the primary products in dispute are both shoes. NSM's product is a skate shoe for children, while Target's shoe is an adult men's running shoe. While the two products may not be in direct competition, they are similar because they are both footwear. In addition, they were sold in a similar discount store setting (Target and K-Mart) and for the same or a similar price.

Target notes that by the time it began selling its Huck model PROSPIRIT shoes, NSM had stopped selling its children's skate shoe bearing the HUCK mark. Target, therefore, contends that there was no competition between the products. Target relies on a decision from this district to make this point. *Boo, Inc. v. Boo.com Group Ltd.*, No. 00-cv-1872 (PAM/JGL), 2002 WL 334417 (D. Minn. Feb. 21, 2002). In that case, however, the analysis of competition between the parties turned, in part, on the fact that the plaintiff had ceased doing business entirely. *Id*. at *1-*2 (noting that the plaintiff had no full-time employees, the owners of the plaintiff did not perform any day-to-day functions, and the plaintiff produced no income). Here, NSM did not stop doing business, it merely stopped selling one of its products, the children's skate shoe, the year before Target's PROSPIRIT Huck shoe appeared for sale. The removal of one product from a company's line-up, even if it is the most similar product to the accused product, is not determinative because direct competition is not required to establish trademark infringement. NSM, therefore, could potentially establish infringement even if a shoe was not the product in question.

The Court concludes, viewing the facts in the light most favorable to NSM, that the products are related and that this factor favors NSM. The Court determines, however, that this factor only slightly favors NSM because the two products were marketed and sold for different purposes (children's versus adult shoes) and because NSM had removed the most clearly competitive product from the market before Target began selling the accused shoe, which would decrease the likelihood of customer confusion.

13

4. Intent to Confuse the Public

Proof of bad intent is not required for success in a trademark infringement case. *Davis v. Walt Disney Co.*, 430 F.3d 901, 904 (8th Cir. 2005). The absence of such intent, however, is a factor to be considered. *Id.*

NSM argues that Target intentionally began infringing on the HUCK mark after Murdock met with Target representatives and showed them NSM products and a PowerPoint presentation including information regarding the products and sales figures. The record, however, does not support NSM's argument.

Though NSM suggests in its brief that a meeting between Murdock and Target occurred, in Murdock's deposition he admitted he did not meet with any personnel from Target. On two occasions, Murdock visited Target headquarters and stopped in at the reception desk. He did not remember if he left any materials on the first occasion. On the second occasion, he came to Minneapolis with the hope that he could request a special meeting with Target staff member Todd Marshall ("Marshall"), but did not have an appointment. When he arrived, however, Marshall informed Murdock that Marshall was "very busy" and would be unable to meet with him, and Marshall advised Murdock to drop off any product samples at Target's "Bullseye Center." (Doc. No. 31 ¶ 13, Ex. M at 134-135.) Murdock left one pair of shoes, two Huck Dolls and his PowerPoint presentation. One week later, Murdock e-mailed Marshall to inquire whether Marshall had received the samples and information. According to Murdock, Marshall indicated he had received them and that Target was not interested in selling NSM's products. NSM's contact with Target was, therefore, fairly incidental.

The record also reflects that there was no connection between Target's receipt of these sample products and the decision to apply the Huck style name to a PROSPIRIT men's athletic shoe. The Target staff members involved in choosing the Huck model name for Target's men's athletic shoes were Ryan Waymire ("Waymire") and Matthew Faltesek ("Faltesek"). Faltesek was the merchandise coordinator for the Huck model shoe and was responsible for choosing the name. Waymire was Faltesek's supervisor.

Target's merchandise coordinators use baby name books when choosing model names for their house brand products.[3] Faltesek was assigned to choose model names for men's shoes beginning with the letters "H" and "S." (Doc. No. 33 ¶ 2.) Faltesek initially chose "Huckleberry," for this model, but Waymire suggested shortening the name to Huck because Waymire was concerned that the word Huckleberry would not fit on the packaging to be used.[4] (*Id.*) Faltesek selected Huckleberry in reference to the Mark Twain character and, at the same time, selected Sawyer and Samuel as model names, which are also names related to Mark Twain. (*Id.*) Neither Waymire nor Faltesek had heard of NSM's products or seen any of the samples of NSM's products at the time they named the accused shoe.

---

[3] According to Waymire, Target did not do searches to determine whether its product style names were trademarked by another party. (Doc. No. 31 ¶ 15, Ex. O at 32.) The Court notes that Target may wish to exercise some greater degree of care in the future in choosing style names than it did in this case.

[4] NSM disputes that the name Huck was chosen because Huckleberry was too long, noting that Target has named another of its shoes "Quadrilateral," which NSM asserts is also a long name. (Doc. No. 39 at 8.) This is too tenuous a link to support a finding that Target intended to confuse the public regarding the source of its accused shoe.

According to Faltesek, the style or model name chosen for a product is "wholly arbitrary," "used for zoning purposes and internal use," and is not used for marketing.[5] (Doc. No. 40 ¶ 5, Doc. No. 43, Ex. E at 24.) Waymire testified that the style name chosen for Target's products is equivalent to a style number. (Doc. No. 40 ¶ 6, Doc. No. 43, Ex. F at 33.) He also testified that the style name allows Target staff members to determine which box a shoe belongs with if the shoe has been removed from the box and where the box should be put on the shelves. (*Id*. Ex. F at 28.)

Even viewing the facts in the light most favorable to NSM, the Court concludes that there is no evidence that Target intentionally chose the name Huck for its PROSPIRIT shoe in order to confuse customers. This factor favors Target.

        5.      Evidence of Actual Confusion

The fifth factor gives weight to the number and extent of instances of actual confusion. *Duluth News-Tribune,* 84 F.3d at 1098. When evaluating evidence at the summary judgment stage, only admissible evidence is considered. Fed. R. Civ. P. 56; *Duluth News-Tribune,* 84 F.3d at 1098.

NSM's evidence of customer confusion is limited to a statement made by Murdock that he was informed by "a close business contact" that Target was selling a

---

[5] NSM disputes Target's assertion that the style or model names given to its products are without special significance. NSM asked Waymire if he would name a shoe "vomit," and Waymire responded that he would not. (Doc. No. 40 ¶ 6, Doc. No. 43 Ex. F at 29.) NSM, therefore, contends that the names Target selects are not completely arbitrary. It is too substantial a leap, however, for this Court to conclude that because Target would not select an obviously repulsive word to attach to a product, its style names become more than an internal aid and zoning device, especially when there is no contrary evidence in the record to rebut Faltesek and Waymire's testimony regarding Target's product naming conventions.

shoe named Huck and that this was "extremely confusing and upsetting to [him] and [his] business." (Doc. No. 45 ¶ 3.)  At the hearing before this Court, NSM also stated that the case began when friends of Murdock advised him that Target was selling a Huck shoe.  NSM did not submit affidavits from any of these persons averring to any confusion.  In its brief, NSM explains that it did not provide survey evidence of customer confusion because:  (1) it is a small company and cannot afford to conduct a survey; (2) it was "too shocked" when it discovered Target's Huck shoe to conduct an expensive survey; and (3) it could not conduct a survey to measure customer confusion because Target changed the name of the shoe to Samuel.  (Doc. No. 39 at 11-12.)  NSM also asserts that evidence of actual customer confusion "cannot be an important factor" in the Court's analysis.  (*Id*. at 12.)

No single *SquirtCo* factor is dispositive in determining trademark infringement.  *Gateway, Inc. v. Companion Prods., Inc.*, 384 F.3d 503, 509 (8th Cir. 2004).  The Court may not, however, ignore a factor in the analysis because a party has failed or is unable to produce evidence regarding that factor.  NSM has not produced evidence of actual customer confusion beyond Murdock's assertion.  This is insufficient and this factor, therefore, weighs in Target's favor.

    6.  Degree of Care of Potential Customers

In evaluating the sixth factor, a court looks to the degree of care expected of an ordinary purchaser.  *Duluth News-Tribune,* 84 F.3d at 1099.  Courts consider consumer confusion less likely where consumers exercise a high degree of care in choosing a product, such as when goods are expensive and are chosen after careful consideration, or

17

when the purchasers are sophisticated.  *Kemp*, 398 F.3d at 1055.  Target asserts that customers exercise a high degree of care in purchasing footwear, even if that footwear is sold at a low price.  NSM conversely argues that consumers shopping at discount stores do so to buy at low prices and do not exercise a high degree of care in making a discount shoe purchase.

The Court concludes that consumers are likely to exercise at least a moderate degree of care when purchasing shoes regardless of where and at what price point the shoes are purchased.  Shoes are not, generally, an impulse item that consumers take off the shelf without thought.  Rather, consumers are likely to try on the shoes they purchase and, more likely than not, try on more than one pair in order to reach their decision.  Also, consumers are likely to evaluate numerous aspects of shoes, including comfort, color and appearance, and intended function (e.g. running shoes, dress shoes, sandals), in addition to price.

Given the degree of care with which consumers select shoes, the Court concludes that it is unlikely that the ordinary consumer would be confused about the differences between skate shoes for children marketed with an action sports theme and a standard men's running shoe.  This factor favors Target.

The Court concludes that only two of the *SquirtCo* factors favor NSM, and those do so only slightly.  Based on its evaluation of all of the factors, even considering the record in the light most favorable to NSM, there is insufficient evidence for a reasonable jury to find Target infringed upon NSM's trademark.  Therefore, the Court grants Target's motion for summary judgment.

## CONCLUSION

The Court denies Target's motion to dismiss because it concludes that NSM's claims are not barred by *res judicata*. The Court, however, grants Target's motion for summary judgment with respect to NSM's claims of trademark infringement.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Defendant's Motion to Dismiss (Doc. No. 49) is **DENIED**.

2. The Defendant's Motion for Summary Judgment (Doc. No. 28) is **GRANTED** with respect to all claims in the Plaintiff's Complaint.

3. The Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: December 3, 2008          s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 Judge of United States District Court